```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO: 11-274

LOUISIANA HOME ELEVATIONS, LLC,                   SECTION: J(4)
ET AL

## ORDER AND REASONS

This matter is before the Court on Defendants Louisiana Home Elevations, L.L.C. ("LHE"), Christopher Benson, and Adolfo Hernandez's **Motion to Dismiss Count 1 of the Indictment (Rec. Doc. 27).** The United States has filed an opposition to the motion **(Rec. Doc. 28)**, to which Defendants have replied. **(Rec. Doc. 39).**

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On October 27, 2012, a Federal Grand Jury returned a seven-count against LHE, Mr. Benson, and Mr. Hernandez. Mr. Benson is the owner of LHE, which is a home elevation and shoring company based in Ponchatoula, Louisiana. Mr. Hernandez is an American citizen who is employed by LHE.

Defendants were jointly charged in five counts: Count 1, conspiracy to harbor illegal aliens; Count 2, conspiracy to launder money; and Counts 5, 6, and 7, illegal structuring of financial transactions. Counts 3 and 4 charge only LHE and Mr. Benson with engaging in monetary transactions in property derived from the specified unlawful activity.

**PARTIES' ARGUMENTS**

Defendants' motion challenges the sufficiency of Count 1 of the seven-count indictment.[1] Count 1 specifically alleges the following:

> **Beginning at a time unknown, but from on or about December 2009 and continuing to on or about August 29, 2011, in the Eastern District of Louisiana, the defendants, LHE, BENSON, and ADOLFO HERNANDEZ, and with others known and unknown to the Grand Jury, knowing and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other to conceal, harbor and shield from detection and attempt to conceal, harbor, and shield said aliens from detection by providing said aliens with a means of financial support through employment at LHE work sites in the Eastern District of Louisiana, said violation having been committed for the purpose of commercial advantage or private financial gain. All in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii) and (v)(I), and Title 8, United States Code, Section 1324(a)(1)(B)(i).**[2]

**A. Defendants' Arguments:**

In their Motion to Dismiss Count 1, Defendants contend that the Indictment fails to state a harboring offense under 8 U.S.C. § 1324. In particular, they argue that the Indictment fails to adequately allege that their conduct "tended to substantially

---

[1] Adolfo Hernandez has joined in his co-defendants' Motion to Dismiss Count 1of the Indictment. Rec. Doc. 30-2.

[2] See Rec. Doc. 1, p. 2. It should be noted that 8 U.S.C. § 1324 and 8 U.S.C. § 1324a are different statutes. The former, the harboring statute, is the statute primarily at issue in the instant motion.

facilitate the alien remaining in the United States illegally," which is a required element of a harboring offense under §1324. Defendants argue that merely alleging that they employed illegal aliens is insufficient as a matter of law to constitute "substantial facilitation." Defendants also argue that the Indictment fails to allege that they did anything to conceal, harbor, or shelter an alien in the United States, as required to sustain a harboring conviction. In support of this argument, Defendants rely on language from cases decided by the Second and Tenth Circuit Courts of Appeals, as well as from another federal district court. See United States v. Kim, 193 F.3d 567, 573 (2d Cir. 1999); United States v. Barajas-Chaves, 134 F.3d 1444, 1450 (10th Cir. 1998); United States v. Moreno-Duque, 718 F. Supp. 254, 259 (D.Vt. 1989). They further point out that the Fifth Circuit has consistently required the Government to prove more than mere employment in order to sustain a harboring conviction.

Defendants also rely on the legislative history of the Immigration and Control Act of 1986. They point out that the harboring statute explicitly stated an exception for the employment of an illegal alien but that the provision was deleted in the 1986 amendment of the act. While they acknowledge that some circuit courts have suggested that the deletion indicates that employment alone can constitute harboring, they contend that the overall scope of the IRCA reforms reveals Congressional

intent to the contrary.  In particular, Defendants submit that Congress would not have passed §1324a, which provides criminal sanctions for employers who employ illegal aliens, while intending that the same conduct would simultaneously violate §1324, which carries much greater penalties.  Under the Defendants' reading of the two statutes, then, knowing employment of illegal aliens is *only* proscribed under §1324a.  Therefore, they argue that Count 1 should be dismissed.

**B. The Government's Arguments**

In opposition, the Government argues that Court 1 should not be dismissed because satisfies each of the three constitutional requirements for an indictment.  The Government argues that the Indictment contains all four elements required to make out a harboring conspiracy offense under 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I), that it fairly informs the Defendants of the charges which they must defend, and that there is no risk of future prosecutions for the same offense.

According to the Government, Defendants' assertion that "mere employment" of an illegal alien is insufficient to sustain a harboring conviction is misguided.  The Government notes that, under Fifth Circuit precedent, all that is required to satisfy the substantial facilitation element is to show that the defendant's conduct made the alien's continued presence in the country "substantially easier or less difficult."  It contends,

then, that knowingly employing an illegal alien is sufficient to meet this broad standard. The Government also points out that other courts have rejected the argument that §1324 and §1324a cannot be reasonably interpreted to cover the same conduct.

Furthermore, in response to Defendants' arguments that the Indictment fails to provide specific allegations of acts designed to harbor aliens, the Government argues that such is not required at this stage in a criminal proceeding. It urges that the Indictment need only provide Defendants with notice of the charged offense, and not provide evidentiary details which will be used to establish their commission of the offense. As such, the Government argues that many the arguments raised in Defendants' arguments are premature, to the extent that they address the sufficiency of the evidence required to sustain a *conviction*, as opposed to the sufficiency of the *Indictment*. According to the Government, the Indictment makes clear the theory of the its case, and that is all that is required.

## LEGAL STANDARD

Rule 12(b)(2) and Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure supply the procedural means for a criminal defendant to challenge the sufficiency of an indictment. In general, an indictment is sufficient to survive a motion to dismiss "if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and insures that there is no risk of future prosecutions for the same

offense." United States v. Cavalier, 17 F.3d 90, 92 (5th Cir. 1994) (citing United States v. Arlen, 947 F.2d 139, 144 (5th Cir. 1991), cert. denied, 503 U.S. 939 (1992)).

The propriety of granting a motion to dismiss an indictment pursuant to Rules 12(b)(2) and 12(b)(3)(B) "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011) (quoting United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005)). "If a question of law is involved, then consideration of the motion is generally proper." Id. (quoting Flores, 404 F.3d at 324).

The determination of whether an indictment sufficiently alleges the elements of an offense is a question of law properly raised by a motion to dismiss. United States v. Shelton, 937 F.2d 140, 142 (5th Cir. 1991). When reviewing a motion to dismiss an indictment for failure to state an offense, a court must take the allegations of the indictment as true and determine whether an offense has been stated. Fontenot, 665 F.3d at 644 (citing United States v. Crow, 164 F.3d 229, 234 (5th Cir. 1999).

As previously noted, an indictment must allege each and every essential element of the charged offense in order to pass constitutional muster. Shelton, 937 F.2d at 142. However, courts must also be mindful that "the law does not compel a

ritual of words," and that the validity of an indictment depends on practical, not technical, considerations. United States v. Ratcliff, 488 F.3d 639, 643 (5th Cir. 2007) (citing Crow, 164 F.3d at 235). An indictment need only "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).

## DISCUSSION

An indictment for conspiracy to harbor illegal aliens must allege four elements, in addition to the existence of the conspiracy: (1) an alien entered or remained in the United States in violation of law; (2) the defendant concealed, harbored, or sheltered from detection the alien within the United States; (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally. United States v. De Jesus-Batres, 410 F.3d 154, 160 (5th Cir. 2005); United States v. Varkonyi, 645 F.2d 453, 456 (5th Cir. 1981).

In Count 1 of the Indictment, the Government alleges that LHE, Mr. Benson, and Mr. Hernandez knowing that "aliens had come to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other to conceal, harbor, and shield from detection and attempt to conceal, harbor, and shield

said aliens from detection by providing said aliens with a means of financial support through employment at LHE work sites in the Eastern District of Louisiana."[3] As explained above, Defendants argue that the allegations cited above are insufficient as a matter of law to show that their conduct substantially facilitated an alien remaining in the United States illegally.

The Court is not persuaded by Defendants' argument, for several reasons. First, the Court notes that the Fifth Circuit has interpreted the substantial facilitation element broadly. See United States v. Shum, 496 F.3d 390, 392 (5th Cir. 2007). In Shum, a defendant appealed his conviction for harboring illegal aliens, arguing that the government had failed to prove that his conduct "substantially facilitated" an alien's ability to remain in the country illegally. In particular, he argued that the substantial facilitation element required the government to prove that "but for" his conduct, the alien would not have remained in the United States. Id. Because the illegal aliens at issue had remained in the United States before and after they had been hired by the defendant, he argued that his conduct had no bearing on their ability to remain in the United States illegally. Rejecting the defendant's narrow interpretation of the

---

[3] See Rec. Doc. 1, p. 2. The Indictment also charges that the offense was committed for the purpose of commercial advantage or private financial gain, which is an aggravating factor that must be alleged and proved beyond a reasonable doubt under Apprendi v. New Jersey, 530 U.S. 466 (2000).

8

substantial facilitation element, the Fifth Circuit instead held that a defendant "substantially facilitates" an alien's continued illegal presence by engaging in any conduct which makes the "illegal alien's presence in the United States substantially easier or less difficult." Id. (internal quotation omitted).

Here, considering the breadth of this standard, the Court cannot hold that knowingly employing illegal aliens is insufficient as a matter of law to constitute the substantial facilitation element. Indeed, as the Fifth Circuit has explained, Congress enacted §1324 to deter employers from hiring unauthorized aliens, which in turn was intended to discourage other aliens from entering the country illegally in order to seek employment. See id. (quoting Kim, 193 F.3d at 573). This, in the Court's view, lends further credence to the fact that knowing employment is sufficient to make out a harboring charge.

This conclusion is also strongly supported by the statutory evolution of §1324. When it was first enacted in 1952, §1324(a) was nearly identical to the current version of the statute, save one important difference. In its original form, §1324 contained a proviso clause that explicitly stated that "for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." 8 U.S.C. § 1324(a) (1982).

Thirty-four years later, in 1986, Congress enacted the

9

Immigration Reform and Control Act, which expanded the scope of §1324(a) by removing the proviso clause. See The Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 112(a), 100 Stat. 3359, 3381-82 (1986).  Both the Second Circuit and Eleventh Circuit Courts of Appeals have found this revision to be significant evidence that Congress intended the harboring statute to prohibit the knowing employment of illegal aliens.  See Kim, 193 F.3d at 574 ("Thus, after the 1986 amendment, §1324 no longer excluded employment from the prohibition against harboring.  The present version of §1324, which is sufficiently broad on its face to encompass the knowing or reckless harboring of illegal aliens by employers, was plainly intended to have that breadth."); Edwards v. Prime, Inc., 602 F.3d 1276, 129 (11th Cir. 2010) ("We tend to agree with the Second Circuit that the revision history of §1324(a)(1)(A)(iii) strongly indicates that one who hires an alien knowing or recklessly disregarding his illegal status is guilty of concealing, harboring, or shielding from detection.").

Nonetheless, Defendants offer two additional reasons why Count 1 fails to state an offense.  First, they argue that the overall scope of the Immigration Reform Control Act of 1986 reveals that knowing employment alone is insufficient to violate §1324.  In particular, they contend that if knowing employment is sufficient to violate §1324, then §1324 and §1324a would overlap.  They argue that Congress would not have intended the same conduct

10

to violate both statutes, especially considering that the harboring statute carries far greater criminal penalties.

While Defendants' argument has some inherent appeal, this argument has been rejected by both the Second and Eleventh Circuits, both of which have found that §1324 and §1324a can reasonably be interpreted to prohibit the same conduct. See United States v. Zheng, 306 F.3d 1080, 1085 (11th Cir. 2002) ("Although §1324 and §1324a appear to cover some of the same conduct, 'the fact that Congress has enacted two sections encompassing similar conduct but prescribing different penalties does not compel a conclusion that one statute was meant to limit, repeal, or affect enforcement of the other.') (quoting Kim, 193 F.3d at 573). As the Supreme Court has explained, statutes may "overlap" or enjoy a "partial redundancy" and yet be fully capably of co-existing. United States v. Batchelder, 442 U.S. 114, 118, 122 (1979).

Second, notwithstanding the Second and Eleventh Circuits' interpretation of the harboring statute, Defendants argue that both these courts have nonetheless consistently required "something more" than mere employment of an illegal alien in order to sustain a harboring conviction, such as intentional conduct designed to shelter illegal aliens from discovery. See, e.g., Kim, 193 F.3d at 574 (upholding harboring conviction where employer instructed illegal alien employees to change their names

on I-9 forms after receiving a notice from the Immigration and Naturalization Service that employees did not have authorization to work); United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007) (upholding harboring conviction for employer who not only employed illegal aliens, but also alerted them to the presence of immigration officials, instructed them not to wear name tags, and helped them obtain housing).

Defendants also contend that the Fifth Circuit has similarly required the Government to show substantially more than knowing employment in order to uphold a harboring conviction. See, e.g., United States v. Martinez-Medina, No., 08-30150, 2009 WL 117611, at *1 (5th Cir. Jan. 19, 2000) (upholding harboring conviction for defendant who knowingly employed illegal aliens, paid these workers in cash, failed to complete the required I-9 forms, provided them with transportation, housing, and utilities, and advised them not to run when Border Patrol vehicles passed); Shum, 496 F.3d at 392 (upholding harboring conviction against employer who hired illegal aliens as janitors, provided them with false identifications, and did not file social security paperwork on their behalf).  Here, unlike in these cases, Defendants argue that Count 1 contains no specific allegations of shielding illegal aliens from detection or instructing them in how to evade immigration officials.

The Court finds Defendant's second argument equally

12

unpersuasive for two principal reasons.  First, as the Eleventh Circuit has observed, the fact that employment plus "something more" is sufficient to constitute a harboring charge does not necessarily compel the conclusion that employment alone is *insufficient*.  See Edwards, 602 F.3d at 1298 (dismissing essentially the same argument and explaining that "[a] holding that X + Y is enough to violate a provision does not mean that X alone is not enough").  Logically speaking, then, these cases do not support Defendants' contention that the indictment ultimately fails to state a harboring offense simply because it fails to allege "something more" than knowing employment.

Furthermore, as the Government points out, the few district court that have directly considered the issue have upheld the sufficiency of indictments even where they allege only that a defendant employed knowingly employed illegal aliens.  See, e.g., United States v. Acambaro Mexican Rests., Inc., No. 08-50009, 2008 WL 2079147, at *2 (W.D. Ark. May 15, 2008) (denying motion to dismiss indictment alleging that defendants harbored illegal aliens by "providing said aliens with a means of financial support through employment" and noting that "having a job where one's immigration status is not scrutinized would make it substantially easier to remain in this country illegally than not having such a job").

Second, the procedural posture of each of the cases cited

13

above is distinct from that of the instant case. In the cases upon which the Defendants rely, the courts were addressing whether the evidence presented at trial was sufficient to sustain a harboring conviction, unlike here, where the sufficiency of the indictment is at issue. The judicial inquiry when reviewing an indictment is somewhat more limited, given that the purpose of an indictment is to give a defendant notice of the nature of the charges against him.

At this early stage of a criminal proceeding, the Government is generally not required to set forth in detail all the factual evidence by which it plans to establish a defendant's guilt at trial. United States v. Gordon, 780 F.2d 1165, 1172 (5th Cir. 1986). Instead, under Rule 7(c)(1), the indictment need only be "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and need not allege the specific means by which a defendant is alleged to have committed the charged offense. FED. R. CRIM. P. 7(c)(1). As the Fifth Circuit has explained, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Longoria, 21 F.3d 1107, at *3 (5th Cir. 1994).

As such, the Fifth Circuit has generally held that these standards will be met when an indictment tracks the language of

the statute under which a defendant is charged and provides basic operative facts consistent with the charged offense. See, e.g., United States v. Adams, 314 F. App'x 633, 641 (5th Cir. 2009) (noting that "[a]n indictment that describes the offense by tracking the relevant statute's unambiguous language is generally sufficient" provided it is "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged"); United States v. Partida, 385 F.3d 546, 557 (5th Cir. 2004) (indictment was sufficient where it cited the statute under which defendant was charged, tracked the statutory language, and contained general factual allegations regarding the defendant's conduct); United States v. Calhoon, 275 F.3d 1081, *1 (5th Cir. 2001) ("Because the indictment here tracks the language of the statute, alleging all the elements of the crime, gives notice of the charges, and permits the defendant to raise double jeopardy, the district court did not err in denying Calhoon's motion to dismiss the indictment."); United States v. Moody, 923 F.2d 341, 351 (5th Cir. 1991) ("It is generally sufficient "when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements.") (internal citations omitted).[4]

---

[4] Indeed, even in those cases in which the Fifth Circuit has purportedly required "something more" than mere employment of illegal aliens to sustain a harboring conviction, this "something more" has generally not been presented in the indictment. For

Here, Count 1 of the Indictment cites and tracks the language of the statutory provisions under which the Defendants are charged, and as discussed above, alleges the four essential

---

example, in Martinez-Medina, the indictment only states the following:

> **On or about March 8, 2007, in the Western District of Louisiana, the defendant, DANIEL MARTINEZ-MEDINA, in reckless disregard of the fact that aliens, namely, Juan Jose Contreras-Garza, Gerardo Martinez-Medina, Jose Maazano-Hernandez, Oswaldo Hernandez-Jasso, Oscar Castillo-Hernandez, and Elias Martinez-Medina, had come to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield from detection, or attempted to conceal, harbor, and shield from detection, such aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii).**

See United States of America v. Martinez-Medina, No. 2:07-cr-20027-TLM-CMH, Indictment, Rec. Doc. 7 (W.D. La. 2007). Likewise, in Shum, the indictment only tracks the relevant statutory language, without referencing the specific means of commission the Government eventually proved at trial:

> **Beginning on or about November 3, 2003, and continuing through on or about February 26, 2004, in the Dallas Division of the Northern District of Texas, defendants, Keon Ha Lee and Shiu Sun Shum, also known as Nixon Shum, knowing and in reckless disregard of the fact that certain aliens had come to, entered and remained in the United States in violation of law, did knowingly and intentionally conceal, harbor and shield from detection such aliens in any place, including any building, for the purpose of commercial advantage and private financial gain. In violation of 8 U.S.C. § 1324(a)(l)(A)(iii) and (a)(l)(B)(I).**

See United States of America v. Shum, No. 3:04-cr-00226-N-2, Superseding Indictment, Rec. Doc. 29 (N.D. Tex. 2004).

16

elements of a harboring charge.  Furthermore, the Court also finds that it sufficiently informs the Defendants of the charge against which they must defend and provides enough specific information that they will be able to avoid any possible double jeopardy in the future.  Bearing in mind the purposes an indictment is designed to serve, as well as the minimal constitutional requirements it is required to satisfy, the Court finds Count 1 is sufficient, and therefore Defendants' motion will be denied.

## CONCLUSION

Accordingly, for the reasons expressed above, **IT IS ORDERED** that Defendants' Motion to Dismiss Count 1 of the Indictment is **DENIED**.

New Orleans, Louisiana, this 26th day of March, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT